**UNITED STATES of America**

v.

**Joseph William CHANDLER, also known as Joseph Shandalov, also known as Joseph Chandaloff, also known as Joseph Shandlor, also known as Rubin Halpert.**

**Civ. No. 7447.**

United States District Court
D. Maryland, Civil Division.
June 27, 1956.

Walter E. Black, Jr., U. S. Atty., and James H. Langrall, Asst. U. S. Atty., Baltimore, Md., for plaintiff.

Joseph Forer, Washington, D. C., and Harold Buchman, Baltimore, Md., for defendant.

THOMSEN, Chief Judge.

This is a suit by the government for revocation of defendant's citizenship, brought under section 340(a) of the Immigration and Nationality Act (1952), 8 U.S.C.A. § 1451(a), and section 338(a) of the Nationality Act of 1940, 8 U.S.C.A. § 738(a). The complaint, as amended, alleges that the latter section was continued in force and effect by section 405 (a) of the Immigration and Nationality Act, 8 U.S.C.A. § 1101, Footnote. Defendant moved to dismiss the amended complaint on the grounds (1) that this proceeding was not instituted upon an affidavit in conformity with section 340 (a) of the Immigration and Nationality Act; (2) that the complaint is based on a repealed statute; (3) that the complaint and relief sought thereby are barred on the grounds of res adjudicata and estoppel by prior judgment; and (4) that the complaint indistinguishably pleads separate and independent statutory grounds for revocation of citizenship in such a way as to impede the defendant in answering and defending. Defendant also moved to strike certain specified allegations of the amended complaint.

In an opinion filed on May 20, 1955, D.C., 132 F.Supp. 650, Judge Coleman overruled the motion to dismiss the complaint. He held, however, that the government cannot now proceed under section 338(a) of the 1940 Act, on the ground that the order and certificate of naturalization were illegally procured, but must proceed under section 340(a) of the 1952 Act, on the ground that such order and certificate of naturalization were procured by concealment of a material fact or by willful misrepresentation; therefore, he held that paragraphs 10, 11, 12 and 13 and those parts of paragraphs 1 and 14 which relate to section 338(a) of the 1940 Act should be struck from the complaint. Judge Coleman did not enter any order in the case before his retirement on June 1, 1955, and defendant renewed his motion to dismiss the amended complaint. The government and the defendant agreed that the ruling on this motion should be delayed pending the decision of the Supreme Court in United States v. Zucca, 351 U.S. 91, 76 S.Ct. 671, 676, which was handed down April 30, 1956.

The Zucca case holds that an "affidavit showing good cause is a procedural prerequisite to the maintenance of proceedings" under section 340(a) of the 1952 Act, and that "the District Attorney must, as a prerequisite to the initiation of such proceedings, file an affidavit showing good cause."

Defendant contends that such an affidavit must be made by a person having personal knowledge of the facts set out in the affidavit, and not, as in this case and in many others, by the Assistant General Counsel of the Immigration and Naturalization Service, setting out facts appearing in the official records of said Service.

The majority opinion in the Zucca case does not require that the affidavit be made by a person having personal knowledge of the facts contained in the affidavit. Such a requirement would often be quite impracticable and would unreasonably obstruct the government in the enforcement of the law. The affidavit in the case at bar illustrates that proposition.

The first two subparagraphs of paragraph 1 of the affidavit recite the naturalization proceedings in the United States District Court at Savannah,

Georgia, in 1943, and the various statements made under oath by defendant at that time. One subparagraph charges that those statements were false and untrue, and others set out in detail the facts which support that charge, namely: that defendant was arrested and charged with specified violations of law on specified dates at four specified places; that he sailed from the port of New York on a specified date, without obtaining a re-entry permit, and thereafter effected re-entry without presenting an immigration visa or submitting to inspection, as required by law, making him subject to deportation up to the time of his naturalization; that defendant "has been an active member and officer of the Communist Party of the United States and organizations affiliated therewith continuously since 1929"; that said party is an organization which at all times since 1929, advised, advocated or taught the overthrow by force or violence of the government of the United States, and other specified action, and engaged in other specified activities; that at all times above mentioned, as defendant well knew, said party was a section of an international organization, whose decisions were binding on said party and the individual members thereof, whether or not such decisions were contrary to the laws of the United States; that defendant "intentionally and deliberately made false statements in the proceedings leading to his naturalization as set forth in the preceding paragraphs and concealed the facts relating to his membership in the Communist Party in order to prevent the making of a full and proper investigation of his qualifications for citizenship; to conceal his lack of attachment to the principles of the Constitution; to induce the naturalization examiner to make an unconditional recommendation to the court that his petition be granted; to preclude inquiry by the court concerning his qualifications for citizenship; and to procure naturalization in violation of law"; and that at the time of his naturalization defendant "was not attached to the principles of the Constitution or

well disposed to the good order and happiness of the United States; he did not intend to renounce allegiance and fidelity to the Union of Soviet Socialist Republics; he did not intend to support and defend the Constitution and laws of the United States against all enemies, foreign and domestic, but, on the contrary, intended to and did retain his allegiance to the Union of Soviet Socialist Republics".

Paragraph 2 of the affidavit states that defendant's naturalization was procured by means of his concealment of material facts and willful misrepresentation, as more particularly set forth in paragraph 1. Paragraph 3 states that good cause exists for the institution of a suit under section 340(a) of the Immigration and Nationality Act to set aside and cancel the naturalization as having been procured by concealment of material facts and by willful misrepresentation. Paragraph 4 alleges residence in Maryland.

If the affidavit merely contained the conclusions set out in paragraphs 2 and 3 thereof, it would be subject to the same condemnation as the affidavit to the complaint in the Zucca case, where the Supreme Court said: "The complaint, under modern practice, is required merely to allege ultimate facts while the affidavit must set forth evidentiary matters showing good cause for cancellation of citizenship." The affidavit in the case at bar sets forth the evidentiary matters, the facts, which support those conclusions and which show good cause for cancellation of citizenship.

■ No one has personal knowledge of all those facts, and it would be unreasonable to require the government to obtain and file a sheaf of affidavits from individuals having personal knowledge of the various items. The affidavit states that the facts appear in the official records of the Immigration and Naturalization Service. The facts alleged in the affidavit show good cause for instituting the proceeding.

The defendant is not being arrested nor deprived of his liberty or property as

a result of the affidavit. He cannot be deprived of his liberty or of any property right until after the facts have been established by competent evidence at a trial on the merits. The situation, therefore, is different from cases involving extradition, search warrants, or warrants for arrest, cited by defendant.

Of course, the affidavit must set forth evidentiary matters, i. e., facts, which show good cause for cancellation of citizenship. So much is required by the majority opinion in the Zucca case, quoted above. But neither that opinion nor the cases cited in support thereof require the conclusion that the affidavit must be made by one or more individuals having personal knowledge of all the facts, i. e., the prospective witnesses.

The two cases cited by the Supreme Court on this point were United States v. Richmond, 3 Cir., 17 F.2d 28, and United States v. Salomon, 5 Cir., 231 F. 928, 929. In United States v. Richmond the Third Circuit noted that no act of commission or omission, bad faith or fraud on the part of the defendant was alleged in the affidavit. The Court relied on United States v. Salomon, in which the Fifth Circuit had found that the affidavit there involved "amounted to nothing more than an assignment of error of law apparent upon the face of the naturalization proceedings. It states no fact from which it may be inferred that a ground for contesting the application existed, * * * it was intended that the required affidavit should state facts constituting 'good cause' for instituting the proceeding, and should do more than point out errors of law in the procedure which led up to the naturalization." The affidavit in the case at bar meets the tests imposed by those cases.

It is true that the dissenting minority in the Zucca case construed the majority opinion to mean that "the Government

must furnish the Court with sworn statements by persons having personal knowledge of the facts". 351 U.S. at page 102, 76 S.Ct. at page 678. But unless the majority of the Court so states, I am unwilling to believe that they intended so to hamstring the enforcement of the law, in an area where for security reasons the government should not be required to disclose prematurely the names of its witnesses and investigators. The defendant has been given the facts he will be called upon to face, and can obtain further information by discovery proceedings before trial and before any possible arrest or deportation. Even a criminal indictment may be based on hearsay. The affidavit in the case at bar sets forth evidentiary matters showing good cause for cancellation of citizenship. It is sufficient. Judge Dimock came to the same conclusion in United States v. Costello, D.C.S.D.N.Y., 142 F. Supp. 325.

It is unnecessary to discuss at length the other points covered by Judge Coleman's opinion. His conclusion that section 338(a) of the 1940 Act does not apply to a proceeding such as this filed after the effective date of the 1952 Act, is supported not only by the opinion of Judge Aldrich in United States v. Harajovic, D.C.D.Mass., 125 F.Supp. 659, but by the later cases of United States v. Stromberg, 5 Cir., 227 F.2d 903, and United States v. Shinkevich, D.C.E.D. Pa., 131 F.Supp. 547. Suits filed before the effective date of the 1952 Act are distinguishable on that ground. United States v. Stromberg, supra. The provisions of section 340(e) of the 1952 Act, 8 U.S.C.A. § 1451(e), should be construed to refer to such pending suits and not to suits filed after the effective date of the 1952 Act.

Nothing need be added to Judge Coleman's opinion on the other points. I will sign an appropriate order.